UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br>v.<br><br>KEITH MITSUYOSHI KANESHIRO (1),<br>DENNIS KUNIYUKI MITSUNAGA (2),<br>TERRI ANN OTANI (3),<br>AARON SHUNICHI FUJII (4),<br>CHAD MICHAEL MCDONALD (5),<br>SHERI JEAN TANAKA (6),<br><br>　　　　　　　　Defendants. | Case No. 1:22-cr-00048-TMB-NC<br><br>ORDER ON DEFENDANT DENNIS MITSUNAGA'S EMERGENCY MOTION *IN LIMINE* NO. 22: TO EXCLUDE EVIDENCE OF COURT ORDER OR, ALTERNATIVELY, FOR A LIMITING AND CURATIVE INSTRUCTION<br>**(Dkt. 744)** |

## I.　INTRODUCTION

Before the Court is Defendant Dennis Kuniyuki Mitsunaga's ("Mitsunaga") "Emergency Motion *in Limine* No. 22: to Exclude Evidence of Court Order or, Alternatively, for a Limiting and Curative Instruction" ("Motion No. 22").[1] Codefendants Keith Mitsuyoshi Kaneshiro, Terri Ann Otani, Aaron Shunichi Fujii, Chad Michael McDonald, and Sheri Jean Tanaka ("Codefendants") took no position on Motion No. 22.[2] The United States filed a "Response in Opposition to Defendant Mitsunaga's Motion *in Limine* No. 22" ("Response in Opposition").[3] The matter is fully briefed. For the following

---

[1] Dkt. 744 (Motion No. 22).
[2] *See* Dkt (absence).
[3] Dkt. 747 (Response in Opposition).

reasons, the Court **GRANTS in part and DENIES in part** the Motion No. 22, such that evidence related to Mitsunaga's violation of the No-Contact Order is admissible, evidence related to Mitsunaga's detention status is inadmissible as irrelevant, and the Court would consider tailoring its limiting instruction to address the evidence with greater specificity. However, the Court requires further clarity from the parties on whether Officer Patrick may testify to these facts under 18 U.S.C. § 3153(c)(1).

## II. BACKGROUND

Given the voluminous litigation in this matter, the Court assumes the Parties are familiar with the factual and procedural history of the case. The Court incorporates by reference the factual and procedural history included in its Order at Docket 484.

### A. *Mitsunaga's Motion No. 22*

Relevant here, Mitsunaga seeks to exclude evidence that he violated the release condition prohibiting him from contacting any witnesses ("No Contact Order").[4] Mitsunaga suggests that the United States initially proposed introducing the violation of the No-Contact Order as a fact stipulation, but Mitsunaga rejected the proposed stipulation.[5] Thereafter, the United States informed Mitsunaga that it intended to call U.S. Probation Officer ("USPO") Erin Patrick ("Officer Patrick") to testify.[6] Mitsunaga argues that any "evidence, argument, and/or testimony" from the United States Probation and

---

[4] Dkt. 744 at 2.
[5] *Id.*
[6] *Id.*

Pretrial Services Office ("USPPS") "regarding the No-Contact Order" is inadmissible under Federal Rules of Evidence ("Rules") 401, 402, 403, and 404.[7]

Alternatively, Mitsunaga suggests that if Officer Patrick's testimony is admitted, first, Mitsunaga should be permitted to elicit testimony that his bond was revoked and inform the jury that he is in custody, and second, that the Court should deliver a Limiting and Curative Instruction.[8] Regarding disclosing Mitsunaga's custody status to the jury, he argues that he would be "forced" to "elicit the entire story" "to assure the jury is presented with the complete story."[9] Specifically, he "would demonstrate that USPPS determined that Mr. Mitsunaga violated his conditions of release, USPPS recommended Mr. Mitsunaga's bond be revoked, and Mr. Mitsunaga's bond was revoked."[10] He further suggests that this testimony "would be highly prejudicial to the defense but nevertheless necessary for the jury to understand the whole story."[11]

Regarding a Limiting Instruction, Mitsunaga argues that the Court's Limiting Instruction No. 14 was improper because the Court ruled that the evidence was admissible as direct evidence, while its Limiting Instruction, based on Model Rule 2.10, directed the jury to consider the evidence "only for its bearing on the question of Defendant Mitsunaga's knowledge and/or consciousness of guilt of the offenses charged in the

---

[7] *Id.* at 3.
[8] *Id.* at 2, 8–9.
[9] *Id.* at 8–9.
[10] *Id.* at 9.
[11] *Id.*

Indictment."[12] Mitsunaga argues that this is improper because "[e]vidence of witness tampering may be considered by the trier of fact as evidence of consciousness of guilt" but that "evidence of witness tampering should not be considered by the jury as evidence of knowledge of the offenses charged in this matter."[13]

Therefore, Mitsunaga suggests that if the Court admits Officer Patrick's testimony, it deliver the following limiting instruction instead:

> You have heard evidence that a Court Order was in place prohibiting Mr. Mitsunaga from contacting Rudy Alivado either directly or through a third party. You have previously heard evidence that Dennis Mitsunaga allegedly attempted to influence the testimony of a witness, Rudy Alivado, through another witness Joanna Lau Kameoka. You may consider this evidence for its bearing on the question of Defendant Mitsunaga's consciousness of guilt of the offenses charged in the indictment.
>
> Of course, it is for you to determine whether you believe this evidence and, if you do believe it, whether you accept it for the purposes offered. You may give it such weight as you feel it deserves.
>
> I instruct you that this evidence is admitted for your consideration only as it relates to Dennis Mitsunaga, and shall not be considered by you as to, or against, any other defendant.
>
> This Limiting Instruction supersedes and replaces previously given Limiting Instruction No.14.

Mitsunaga does not indicate when the Limiting Instruction would be appropriate.

### B. United States' Response in Opposition

Opposing, the United States confirms that Officer "Patrick's testimony will be brief, surgical, relevant, and important to help the jury make sense of Dennis Mitsunaga's recent"

---

[12] *Id.* at 10.
[13] *Id.*

witness tampering.[14] The United States details Officer Patrick's unique involvement with Mitsunaga's release conditions from his initial appearance to the present, including preparing and sending a letter to Mitsunaga containing the no-contact list and twice visiting the address to which she mailed it.[15] The United States also indicates "Officer Patrick will testify that she knows Mitsunaga was aware of the no-contact order because he subsequently (successfully) sought to modify" it.[16]

The United States argues that it is relevant under Rule 401 as "highly probative evidence of his consciousness of guilt."[17] The United States submits that Officer Patrick's testimony is evidence of Mitsunaga's witness tampering because "Mitsunaga's knowledge of the no-contact order is central to his tampering efforts," and "Officer Patrick will testify to the terms of the order and Mitsunaga's knowledge of those terms."[18] Specifically, the United States argues that "Officer Patrick's testimony explains for the jury why Mitsunaga used Kameoka, plus a ruse, to get to Alivado: Mitsunaga knew there was a no-contact order that prevented him from any contact, direct or indirect, with Alivado."[19] Thus, "the presence of the no-contact order is a fact central to the tampering efforts."[20] It argues that

---

[14] Dkt. 747 at 1.
[15] *Id.* at 2.
[16] *Id.*
[17] *Id.* at 4–5.
[18] *Id.* at 5
[19] *Id.* at 3.
[20] *Id.* at 5.

it demonstrates both the need for an intermediary and a "ruse" for that meeting, making it "highly probative evidence of his consciousness of guilt."[21]

The United States also argues that the evidence is admissible under Rule 403 because Officer Patrick's limited testimony will not "result in 'unfair prejudice' that substantially outweighs the probative value of the evidence."[22] Nor will it confuse the jury as it is more likely to aid the jury in understanding Mitsunaga's course of action in witness tampering, nor will it be cumulative as the relevant details of the No-Contact [O]rder have not been established yet, though one witness already alluded to the fact of it.[23]

Regarding Rule 404(b), the United States suggests that Mitsunaga's arguments are ill-founded because "Mitsunaga's violation of the [N]o-[C]ontact [O]rder is not being offered for 'propensity' purposes," but rather, to "illuminate the extent of Mitsunaga's guilty consciousness (i.e., willingness to take desperate measures to get to Alivado, including violating a Court order)."[24] Nonetheless, the United States recalls that Rule 404(b) standards currently do not apply because Mitsunaga's witness tampering is directly admissible pursuant to this Court's order, arguing that Officer Patrick's evidence is likewise directly admissible or at least inextricably intertwined.[25]

---

[21] *Id.*
[22] *Id.* at 6–7.
[23] *Id.* at 7.
[24] *Id.* at 8.
[25] *Id.* ("The no-contact order cannot be extracted from the interaction between Kameoka and Alivado. The existence of the order is baked into Mitsunaga's tampering effort.").

Relatedly, the United States also argues that the Court's limiting instruction on witness tampering should not be altered because it "is sufficient to encompass Officer Patrick's testimony."[26] Regarding Mitsunaga's issue with including "knowledge" in the limiting instruction, the United States notes that "[d]irect evidence—as the Court found the tampering to be—is not subject to any limitations" such that it can be introduced for any purpose, including "knowledge."[27] The United States asserts that "Mitsunaga's claim that "knowledge" is only a Rule 404(b) concept is mistaken" and that although the limiting instruction "resembles a Rule 404(b) instruction," "that was a cautionary boon to Mitsunaga, not a flaw."[28]

### III.  LEGAL STANDARD

#### A. *Motions* in Limine

"A motion *in limine* is a procedural device to obtain an early and preliminary ruling on the admissibility of evidence"[29] and may be used to request evidence be either excluded or admitted before trial.[30] Motions *in limine* are appropriate when the "mere mention of

---

[26] *Id.* at 10.
[27] *Id.*
[28] *Id.*
[29] *Barnard v. Las Vegas Metro. Police Dep't*, No. 2:03-cv-01524-RCJ-LRL, 2011 WL 221710, at *1 (D. Nev. Jan. 21. 2011); *Research Corp. Techs. v. Microsoft Corp.*, No. CV-01-658-TUC-RCJ, 2009 WL 2971755, at *1 (D. Ariz. Aug. 19, 2009).
[30] *See* Fed. R. Evid. 103; *United States v. Williams*, 939 F.2d 721, 723 (9th Cir. 1991) (affirming district court's ruling *in limine* that prosecution could admit impeachment evidence under Fed. R. Evid. 609).

evidence during trial would be highly prejudicial."[31] "*[I]n limine* rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial."[32]

A party seeking to exclude evidence through a motion *in limine* must satisfy a "high standard" and show the evidence is inadmissible on all potential grounds.[33] Otherwise, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context."[34]

B. *Relevance and Prejudice*

Relevant evidence is that which "has any tendency to make a fact more or less probable than it would be without the evidence[] and . . . the fact is of consequence in determining the action."[35] Relevant evidence is admissible unless the United States Constitution, a federal statute, the rules of evidence, or the Supreme Court provide otherwise; irrelevant evidence is inadmissible.[36] However, relevant evidence may still be excluded under Rule 403 "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[37]

---

[31] *Barnard*, 2011 WL 221710, at *1 (quoting BLACK'S LAW DICTIONARY 1109 (9th ed. 2009)); *Research Corp.*, 2009 WL 2971755, at *1.
[32] *Ohler v. United States*, 529 U.S. 753, 758, n.3 (2000).
[33] *Barnard*, 2011 WL 221710, at *1 (citations omitted); *BNSF Ry. Co. v. Quad City Testing Lab'y, Inc.*, No. CV-07-170-BLG-RFC, 2010 WL 4534406, at *1 (D. Mont. Oct. 28, 2010) (citations omitted); *Research Corp.*, 2009 WL 2971755, at *1 (citations omitted).
[34] *Barnard*, 2011 WL 221710, at *1 (citations omitted); *BNSF*, 2010 WL 4534406, at *1 (citations omitted); *Research Corp.*, 2009 WL 2971755, at *1 (citations omitted).
[35] Fed. R. Evid. 401.
[36] Fed. R. Evid. 402.
[37] Fed. R. Evid. 403.

### C. Evidence of Consciousness of Guilt

"[T]he concealment of evidence subsequent to a commission of a crime or evidence of conduct designed to impede a witness from testifying truthfully may indicate consciousness of guilt and should be placed before the trier of fact."[38] Further, the Ninth Circuit has stated that efforts to intimidate witnesses into "withholding information . . . shows consciousness of guilt—second only to a confession in terms of probative value."[39] Further, the Ninth Circuit has held that evidence of witness tampering is admissible relative to other charges where it is "part and parcel of the allegations."[40]

---

[38] *United States v. Brashier*, 548 F.2d 1315, 1325 (9th Cir. 1976); *see also United States v. Collins*, 90 F.3d 1420, 1428 (9th Cir. 1996) ("[E]vidence of the [defendants'] attempts to induce witnesses to lie is indicative of consciousness of guilt and may be placed before the jury."); *United States v. Castillo*, 615 F.2d 878, 885 (9th Cir. 1980) ("An attempt by a criminal defendant to suppress evidence is probative of consciousness of guilt and admissible on that basis.").

[39] *United States v. Meling*, 47 F.3d 1546, 1557 (9th Cir. 1995).

[40] *United States v. Ho*, 651 F. Supp. 2d 1191, 1200–02 (D. Haw. 2009); *see, e.g.*, *United States v. Begay*, 567 F.3d 540, 552 (9th Cir. 2009), *on reh'g en banc*, 673 F.3d 1038 (9th Cir. 2011) (finding evidence that defendant intimidated two government witnesses was admissible to show consciousness of guilt); *Meling*, 47 F.3d at 1558 (affirming district court's determination that an attempt to intimidate witnesses is admissible to show "consciousness of guilt—second only to a confession in terms of probative value"); *see also United States v. Rock*, 282 F.3d 548, 552 (8th Cir. 2002) (affirming denial of the defendant's motion to sever felon-in-possession charge from witness tampering charge; stating "[w]here evidence that a defendant had committed one crime would be probative and thus admissible at the defendant's separate trial for another crime, the defendant does not suffer any additional prejudice if the two crimes are tried together" (internal quotations and citations omitted)); *United States v. Gatto*, 995 F.2d 449, 454 (3d Cir. 1993) ("It is well-established that evidence of threats or intimidation is admissible under Rule 404(b) to show a defendant's consciousness of guilt . . . ."); *United States v. Balzano*, 916 F.2d 1273, 1281 (7th Cir. 1990) (applying general rule in affirming trial court's denial of motion to sever that "evidence of a defendant's attempts at intimidation of a witness or of a person cooperating with a government investigation is admissible to demonstrate a defendant's 'consciousness of guilt' of the charges which were the subject of the witness' testimony or cooperation"); *United States v. Fagan*, 821 F.2d 1002, 1007 (5th Cir. 1987) (explaining that evidence of mail fraud is admissible in a trial for witness tampering to show motive, while evidence of witness tampering is admissible in a trial for mail fraud to show "guilty knowledge"); *United States v. Monahan*, 633 F.2d 984, 985 (1st Cir. 1980) (stating that "[e]vidence of threats to witnesses can be relevant to show consciousness of

### D. Rule 404(b)

Under Federal Rule of Evidence ("Rule") 404(b)(1), evidence of a defendant's prior conviction, wrong, or act is inadmissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."[41] "This prohibition reflects the 'underlying premise of our criminal justice system, that the defendant must be tried for what he did, not for who he is.'"[42]

Rule 404(b) "is inapplicable, however, where the evidence the government seeks to introduce is directly related to, or inextricably intertwined with, the crime charged in the indictment."[43] Courts have found evidence is "inextricably intertwined" with the crime charged "and therefore need not meet the requirements of Rule 404(b)" where (1) the evidence "constitutes a part of the transaction that serves as the basis for the criminal charge" or (2) the evidence is necessary for "the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime."[44]

Further, under Rule 404(b)(2), evidence falling within the scope of Rule 404(b) "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."[45] To introduce evidence under Rule 404(b)(2),

---

guilt," particularly where a defendant's conduct "implies a knowledge and fear of particular and damaging testimony intimately related to the prosecution at hand").
[41] Fed. R. Evid. 404(b)(1).
[42] *United States v. Verduzco*, 373 F.3d 1022, 1026 (9th Cir. 2004).
[43] *United States v. Lillard*, 354 F.3d 850, 854 (9th Cir. 2003) (citing *United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir. 1993)).
[44] *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012–13 (9th Cir. 1995).
[45] Fed. R. Evid. 404(b)(2).

[t]he Government carries the burden to prove that the proposed evidence satisfies four requirements:

(1) the evidence tends to prove a material point (materiality); (2) the other act is not too remote in time (recency); (3) the evidence is sufficient to support a finding that defendant committed the other act (sufficiency); and (4) [in certain cases,] the act is similar to the offense charged (similarity).[46]

If the Court finds these requirements are met, it must then determine, under Rule 403, whether the "probative value [of the evidence] is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[47]

## IV.   DISCUSSION

The Court concludes that evidence related to Mitsunaga's violation of the No-Contact Order is generally admissible as proposed by the United States, that evidence related to Mitsunaga's detention status is inadmissible as irrelevant and prejudicial, and that the limiting instruction related to Mitsunaga's witness tampering would apply if the parties so seek and may be amended and tailored to the evidence of Mitsunaga's release condition violations. However, the Court is not yet able to determine on this record whether Officer Patrick may testify to these facts under 18 U.S.C. § 3153(c)(1).

A. *Evidence of the No-Contact Order is generally admissible.*

The Court concludes that evidence of Mitsunaga's violation of the No-Contact Order is generally admissible as direct evidence of, or at least inextricably intertwined with,

---

[46] *United States v. Charley*, 1 F.4th 637, 647 (9th Cir. 2021).
[47] Fed. R. Evid. 403; *see also United States v. Vo*, 413 F.3d 1010, 1018 (9th Cir. 2005).

the charged conspiracy. Mitsunaga points to no legal authority for the proposition that evidence of witness tampering should be treated as separable from evidence that that conduct violates a release condition. Nor can the Court find any authority supporting the position.[48] Moreover, the Court agrees that "Mitsunaga's knowledge of the [N]o-[C]ontact [O]rder is central to his tampering efforts" as the evidence would contextualize for the jury the prior testimony on this issue from two witnesses, and would help explain Mitsunaga's reasoning for using an intermediary and establish his knowledge of No-Contact Order. Therefore, the Court's analysis regarding evidence of Mitsunaga's witness tampering also applies to evidence that Mitsunaga violated the No-Contact Order.[49]

### B. *The Court is not convinced that Officer Patrick may testify.*

Though the Court concludes that evidence regarding the No-Contact Order is generally admissible under the same theory as other evidence of witness tampering, the Court remains concerned that Officer Patrick may not be a proper witness to introduce this evidence. The Court requires further clarity from the parties on this matter.

According to 18 U.S.C. § 3153(c)(1), which governs the organization and administration of pretrial services:

---

[48] *See United States v. Nelson*, 15 F.3d 1093 (9th Cir. 1994) (finding no abuse of discretion to admit evidence of violation of pretrial release condition as probative); *United States v. Garcia*, No. 18-CR-00466-BLF, 2021 WL 4594774, at *7 (N.D. Cal. Oct. 6, 2021) (admitting evidence that defendant, after being arraigned and on the day of a bond hearing, "cut his GPS monitoring bracelet, invented a kidnapping story, and told his girlfriend to call 911 after he fled their house" because inference could be drawn from defendant's behavior to flight to consciousness of guilt to guilt of the crime charged).

[49] *See* Dkt. 731 at 13–14.

> Except as provided in paragraph (2) of this subsection, information obtained in the course of performing pretrial services functions in relation to a particular accused shall be used only for the purposes of a bail determination and shall otherwise be confidential.

Paragraph (2) provides certain exceptions to the confidentiality requirement, including:

> (A) by qualified persons for purposes of research related to the administration of criminal justice;
>
> (B) by persons under contract under section 3154(4) of this title;
>
> (C) by probation officers for the purpose of compiling presentence reports;
>
> (D) insofar as such information is a pretrial diversion report, to the attorney for the accused and the attorney for the Government; and
>
> (E) in certain limited cases, to law enforcement agencies for law enforcement purposes.

Moreover, paragraph (3) stipulates that:

> Information made confidential under paragraph (1) of this subsection is not admissible on the issue of guilt in a criminal judicial proceeding unless such proceeding is a prosecution for a crime committed in the course of obtaining pretrial release or a prosecution for failure to appear…

The Court is concerned that Officer Patrick's testimony, while generally pertinent and admissible as described by the United States, fails to satisfy the above statutory requirements. The United States stated that "[s]hortly after Dennis Mitsunaga's initial appearance, [Officer] Patrick met with Dennis Mitsunaga to review his court imposed pretrial conditions" and "[d]uring his meeting with Officer Patrick, Mitsunaga acknowledged that he understood the conditions of his release."[50] The United States further alleges that Officer Patrick and her colleagues prepared an email and letter containing the "list" of names under the No-Contact Order, including Rudy Alivado, and that "she twice

---

[50] Dkt. 747 at 2.

visited the address where the no-contact letter was mailed" and "[o]n both occasions, Mitsunaga was present."[51] Further, the United States suggests that Officer Patrick can speak to Mitsunaga's awareness of the No-Contact Order due to her knowledge that he successfully moved to modify it.[52]

As the Ninth Circuit has noted, "courts have ruled that [information from a pretrial services report] may be used to impeach a defendant."[53] But beyond use for impeachment, other circuits have found **reversible error** when a district court improperly admitted a USPO officer's testimony without establishing the circumstances authorizing disclosure, including making specific findings of good cause that would allow the evidence's disclosure pursuant to the Guide to Judiciary Policy at Vol. 8A §§ 240.20.20(a) and 240.20.30(i)–(j).

As the Seventh Circuit observed, "[j]udges may certainly order disclosure permitted by the Act in appropriate circumstances."[54] But "[d]istrict courts should exercise this power in accordance with the pretrial services regulations and any relevant local rules."[55] Indeed, the Seventh Circuit reversed a jury's conviction where a judge erroneously admitted a USPO officer's testimony without showing good cause for disclosure under the four factors

---

[51] *Id.*
[52] *Id.*
[53] *United States v. Kerr*, 981 F.2d 1050, 1054 (9th Cir. 1992) (citing *United States v. Stevens*, 935 F.2d 1380, 1395 (3d Cir.1991); *United States v. Wilson*, 930 F.2d 616, 619 (8th Cir.), *cert. denied*, 502 U.S. 872 (1991)).
[54] *United States v. Chaparro*, 956 F.3d 462, 476 (7th Cir. 2020).
[55] *Id.*

set forth in the Guide to Judiciary Policy,[56] "limited to the minimum information necessary to carry out the purpose of the disclosure," and consistent with all regulations and local rules.[57]

Neither party has yet addressed whether Officer Patrick's testimony, as described, constitutes "information obtained in the course of performing pretrial services functions in relation to a particular accused," and if so whether any exception applies that would allow its introduction.[58] Accordingly, if Officer Patrick is to testify, the Court will require a showing that her testimony comports with 18 U.S.C. § 3153. Therefore, at this time, Mitsunaga's Motion No. 22 is GRANTED such that, absent such a showing, Officer Patrick may not testify.

### C. Evidence that Mitsunaga is incarcerated is likely moot, but nonetheless, would be excluded.

As the Court has determined that Officer Patrick may not testify at this time, Mitsunaga's argument that he "will be forced to elicit from [Officer Patrick] what happened

---

[56] *See* 8A Guide to Judiciary Policy § 240.20.30(i) ("The judge may order the disclosure of pretrial services information if such officer finds that there is good cause for such disclosure after considering: (1) any promise of confidentiality to the source of the information; (2) any harm that such disclosure might cause to any person; (3) the objective of confidentiality, as stated in the confidentiality regulations; and (4) the purpose of the disclosure.")
[57] *Chaparro*, 956 F.3d 462, 476.
[58] *See, e.g.*, *United States v. Santa*, 769 F. App'x 450, 451 (9th Cir. 2019) (affirming district court's exclusion of confidential information from a pretrial services officer pursuant to 18 U.S.C. § 3731 because no exception applied and noting that "[p]retrial supervisees and other individuals who provide information to PSOs about those supervisees would be unlikely to provide candid, complete information"); *United States v. Spayd*, No. 3:19-CR-0111-JMK, 2022 WL 4367621, at *8 (D. Alaska Sept. 20, 2022) (excluding pretrial services officer's testimony because prosecution "ha[d] not shown how [the officer's] testimony would fall outside the scope of confidential information as defined by § 3153(c)(1) or that any of the exceptions listed in § 3153(c)(2) apply").

next," including USPPS's determinations regarding his release condition violations and recommendation that his bond be revoked, is moot.

Nonetheless, regardless of the testifying witness, such evidence is inadmissible. The Court concludes that it is both irrelevant and, as Mitsunaga acknowledges, "highly prejudicial."[59] Mitsunaga cites neither evidentiary rules nor case law in support of his attempt to admit evidence that his pretrial release condition violations led to his current detention.[60] The Court will not permit the admission of irrelevant, "highly prejudicial" evidence, particularly where a defendant invites unfair prejudice against himself.

   D. *The Court will tailor its existing limiting instruction to the evidence offered regarding pretrial release condition violations.*

At this time, Mitsunaga's request for an altered limiting instruction for Officer Patrick's testimony is also likely moot. But should evidence regarding Mitsunaga's pretrial release violation be introduced, whether through Officer Patrick or others, the Court would consider tailoring its limiting instruction to assist the jury in considering such evidence. The Court is not persuaded by Mitsunaga's argument that evidence of witness tampering should not be considered as evidence of knowledge.[61] Mitsunaga cites no law to support this argument. Nor can the Court find any controlling authority on point.[62] And as the

---

[59] Dkt. 744 at 8–9.
[60] *See id.*
[61] *Id.* at 10.
[62] *But see Valenzuela Gallardo v. Barr*, 968 F.3d 1053, 1066 (9th Cir. 2020) ("[O]bstruction can only arise when justice is being administered. Unless that fact exists [obstruction] cannot be committed, and while, with knowledge or notice of that fact, the intent to offend accompanies obstructive action, without such knowledge or notice the evil intent is lacking.") (quoting *Pettibone v. United States*, 148 U.S. 197, 207 (1893) (superseded by statute).

United States notes, direct evidence is "not subject to any limitations" on the purpose for which it can be considered, so the limiting instruction was "a cautionary boon to Mitsunaga, not a flaw."[63] Therefore, the Court cannot agree that the limiting instruction, as delivered, was improper. It will not omit "knowledge" if the limiting instruction is delivered again, nor offer a curative instruction to that effect, rejecting Mitsunaga's proposal that a new limiting instruction "supersedes and replaces" the prior limiting instruction on the subject.[64]

However, the Court does observe that the new proposed limiting instruction is tailored more closely to the new evidence that the United States seeks to introduce, and would consider such an amendment. Specifically, the new proposed limiting instruction states: "You have heard evidence that a Court Order was in place prohibiting [Dennis] Mitsunaga from contacting Rudy Alivado either directly or through a third party."[65] The Court tends to agree with the United States that the existing limiting instruction "is sufficient to encompass Officer Patrick's testimony"[66] while addressing the primary concern of instructing the jury to consider evidence for a proper purpose and not against

---

[63] Dkt. 747 at 10.
[64] The Court did not rule on whether evidence of Mitsunaga's witness tampering would be admissible under Rule 404(b) as "other act" evidence because it is direct evidence. "When Rule 404(b) evidence is offered to prove knowledge, the prior act must be sufficiently similar to the charged act as 'to make the existence of the defendant's knowledge more probable than it would be without the evidence.'" *United States v. Rodriguez*, 880 F.3d 1151, 1167 (9th Cir. 2018) (quoting *United States v. Hardrick*, 766 F.3d 1051, 1055 (9th Cir. 2014)). The Court has not yet ruled on whether Mitsunaga's witness tampering before this tribunal is "sufficiently similar" to other instances of obstructive conduct involving witnesses before other tribunals at issue in this case.
[65] Dkt. 744 at 10.
[66] Dkt. 747 at 10.

any other defendant. Nevertheless, if the parties so seek, the Court would consider tailoring its earlier limiting instruction similarly.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** Defendant Mitsunaga's Motion No. 22.

IT IS SO ORDERED.

Dated this 29th day of April, 2024.

*/s/ Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE
