UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

UNITED STATES OF AMERICA,

                    Plaintiff,

          v.

KEITH MITSUYOSHI KANESHIRO (1),
DENNIS KUNIYUKI MITSUNAGA (2),
TERRI ANN OTANI (3),
AARON SHUNICHI FUJII (4),
CHAD MICHAEL MCDONALD (5),
SHERI JEAN TANAKA (6),

                    Defendants.

Case No. 1:22-cr-00048-TMB-NC

ORDER ON DEFENDANT DENNIS
MITSUNAGA'S APPEAL OF ORDER
OF DETENTION
**(Dkts. 782, 786)**

## I.    INTRODUCTION

Before the Court is Defendant Dennis Kuniyuki Mitsunaga's ("Mitsunaga") Appeal

of Order of Detention (the "Appeal").[1] Mitsunaga appeals the Court's Order Revoking

Release and Ordering Detention[2] and "requests the Court grant his release from custody

under conditions."[3] Codefendants Keith Mitsuyoshi Kaneshiro ("Kaneshiro"), Terri Ann

Otani ("Otani"), Aaron Shunichi Fujii ("Fujii'), Chad Michael McDonald ("McDonald"),

and Sheri Jean Tanaka ("Tanaka") ("Codefendants") took no position on the Appeal.[4] The

---

[1] Dkt. 782 (Defendant Mitsunaga's Redacted Appeal of Order of Detention); Dkt. 786 (Defendant Mitsunaga's Sealed Unredacted Appeal of Order of Detention); Dkt. 796 (Sealed Amended Exhibit D); Dkt. 803 (Sealed Supplemental Exhibit F).
[2] Dkt. 726 (Order Finding Violation of Pretrial Release Conditions; Revoking Release and Ordering Detention; and Denying Mitsunaga's Motion for Release).
[3] Dkt. 782 at 1.
[4] *See* Dkt (absence).

United States filed an Answering Brief to Mitsunaga's Appeal (the "Answering Brief").[5] At the conclusion of the hearing on this matter, the United States Probation and Pretrial Services ("USPPS") orally recommended that Mitsunaga's detention continue.[6] The matter is fully briefed, and[7] for the following reasons, the Court **AFFIRMS** the Detention Order and **DENIES** the Appeal. Further, consistent with its oral order at the hearing, the Court *sua sponte* construes the Appeal as a new Motion for Bail Review (the "Motion"), and **DENIES** Mitsunaga's request for release.

## II.   BACKGROUND

Given the voluminous litigation in this matter, the Court assumes the Parties are familiar with the factual and procedural history of the case. The Court incorporates by reference the factual and procedural history included in its Order at Docket 484.

Relevant here, Mitsunaga filed an appeal of the Court's Order Revoking Release and Ordering Detention.[8]

### A.  *Order of Detention*

Mitsunaga was placed into custody by Order of the Court on April 19, 2024.[9] At a revocation hearing on April 22, 2024, Magistrate Judge Cousins revoked Mitsunaga's

---

[5] Dkt. 804 (United States' Redacted Answering Brief to Mitsunaga's Appeal of the Court's Detention Order); Dkt. 808 (United States' Sealed Unredacted Answering Brief to Mitsunaga's Appeal of the Court's Detention Order).
[6] Dkt. 819 (Minute Entry).
[7] *See id.*
[8] *See* Dkts. 782, 786.
[9] *See* Dkt. 782 at 2.

pretrial release, finding that Mitsunaga violated his pretrial release conditions in three ways:

> *First*, the prosecution established by more than clear and convincing evidence that Mitsunaga violated the pretrial release condition that he have no contact, directly or indirectly, with a specified witness. 18 U.S.C. § 3148(b)(1)(B). *Second*, the prosecution established probable cause to believe that Mitsunaga committed a federal crime while on release: obstruction of justice under 18 U.S.C. § 1503. *Third*, the prosecution established probable cause to believe that Mitsunaga committed a federal crime while on release: witness tampering under 18 U.S.C. § 1512(b).[10]

Judge Cousins further found that "no condition or combination of conditions of release will assure that Mitsunaga will not pose a danger to the safety of any other person or the community," and that Mitsunaga "is unlikely to abide by any condition or combination of conditions of release."[11]

Considering the factors in 18 U.S.C. § 3142(g) governing bail, Judge Cousins noted that "Mitsunaga is 82 years old and presents a history of serious medical issues that will require vigilant monitoring and treatment."[12] He rejected as insufficient Mitsunaga's proposed "enhanced restrictions," which included:

> **(1) Secured property bond.** Mr. Mitsunaga and his wife own real property with equity of approximately $1.2 million that can be utilized to secure the bond. (Ex. B, Proposed Real Property.)
>
> **(2) House arrest with electronic monitoring.** Mr. Mitsunaga's movements may be limited to his home, meetings with his attorneys, court, and necessary medical appointments.
>
> **(3) Increased no contact order.** Mr. Mitsunaga's contact may also be further limited to only his attorneys, his wife, his daughter and grandchildren.
>
> **(4) Phone limitation use.** Mr. Mitsunaga's phone use may be limited to his attorneys, his wife and his daughter.[13]

---

[10] Dkt. 726 at 2 (emphasis in original).
[11] *Id.*
[12] *Id.*
[13] *See* Dkt. 724 (Mitsunaga's Motion Why Pretrial Release Should Not Be Revoked) at 5.

Noting that "Mitsunaga's recent actions show cunning, audacity, planning, and desperation," Judge Cousins concluded that these proposed conditions were "insufficient" to reasonably mitigate the risk that Mitsunaga or those acting for him would "further corrupt the truth-seeking of trial."[14] Thus concluding, Judge Cousins held that Mitsunaga was "unlikely to abide by any combination of conditions of release" and ordered him committed to the custody of the Bureau of Prisons ("BOP").[15]

### B.  New Health Concerns

Soon after his detention, Mitsunaga raised concerns about his medical treatment while at Federal Detention Center ("FDC") Honolulu. On April 29, 2024, the Court held a status conference in response to concerns from Mitsunaga's counsel that he was not receiving adequate medical care at FDC Honolulu.[16] On May 6, 2024, Mitsunaga fainted in his cell, hit his head, sustained a superficial laceration, and was transported to the emergency room for treatment.[17]

### C.  Mitsunaga's Appeal

Mitsunaga filed an Appeal of the Order of Detention, arguing that "his health has deteriorated considerably" since his detention at FDC Honolulu, and that the "conditions proposed at the [revocation] hearing are sufficient to rebut the presumption of detention and to reasonably assure the safety of the community and address all the concerns raised by [USPO]."[18] Mitsunaga first argues that it is "unlikely" BOP can adequately manage his

---

[14] Dkt. 726 at 3.
[15] *Id.*
[16] Dkt. 782 at 3; Dkt. 756 (Minute Entry).
[17] Dkt. 782 at 3–4.
[18] *Id.* at 1–2.

current medical needs.[19] At 82 years old, Mitsunaga argues he "suffers from serious health concerns," including "an ischemic stroke (brain bleed) in 2018" requiring hospitalization and a recent diagnosis of cerebral atrophy.[20] Moreover, he reports that his condition has further deteriorated in recent weeks; he notes that he "has fallen multiple times while in BOP custody" and that "he is not receiving all the medications he needs."[21] Further, as he is currently responsible for self-administering his medication, he reports difficulty adhering to his prescribed regimen due to the "early hour of his departure" for trial.[22] Mitsunaga argues the above factors place him in a "precarious situation" and that "[s]omething as simple as a common cold presents grave health risks."[23] Additionally, he suggests that if he remains in BOP's custody, this could "caus[e] his health to continue to deteriorate which will continue to affect the uninterrupted progression of the trial."[24]

Next, Mitsunaga submits that several other factors support his release.[25] He observes he has no criminal history and "has led an upstanding life."[26] Noting that he has remained on release with no conditions for nearly two years with no violations, he further argues that the recent alleged violations of his release conditions represent "an isolated incident" and do not reflect a "pattern of conduct."[27] He suggests that his medical

---

[19] *Id.* at 4.
[20] *Id.* at 3–5, 7.
[21] *Id.* at 5–6.
[22] *Id.*
[23] *Id.* at 3–6.
[24] *Id.* at 5.
[25] *Id.*
[26] *Id.*
[27] *Id.* at 6–7.

conditions, particularly symptoms associated with his cerebral atrophy diagnosis, may have "impacted [his] decision making and conduct which resulted in the violations of his conditions of release" in this case.[28]

Last, Mitsunaga proposes a series of "restrictive conditions" which he argues can be imposed to "reasonably assure the safety of the community and the integrity of the trial," including:

> **(1) Secured property bond.** Mr. Mitsunaga and his wife own real property with equity . . . that can be utilized to secure the bond. (Ex. C, Proposed Real Property.)
>
> **(2) Unsecured sureties.** Mr. Mitsunaga's wife, Chan OK Mitsunaga, and daughter, Lois Mitsunaga, will agree to unsecured sureties in the amount of $250,000.00 each and act as responsible parties for Mr. Mitsunaga.
>
> **(3) House arrest with electronic monitoring.** Mr. Mitsunaga's movements may be limited to his home, meetings with his attorneys, court, and necessary medical appointments.
>
> **(4) Private security supervision.** Mr. Mitsunaga will arrange for private security approved by USPPS to remain outside his home and report any violation of a release condition to the Court.
>
> **(5) Increased no contact order.** Mr. Mitsunaga's contact may also be further limited to only his attorneys, his wife, his daughter and grandchildren.
>
> **(6) Phone limitation use.** Mr. Mitsunaga's phone use may be limited to his attorneys, his wife, and his daughter.
>
> **(7) Phone records provided.** Mr. Mitsunaga will provide weekly logs of his phone calls and text messages to USPPS to ensure compliance with phone limitation conditions.[29]

---

[28] *Id.* at 7.
[29] *Id.*

### D. United States' Answering Brief

Opposing Mitsunaga's Appeal, in its Answering Brief, the United States urges the Court to "not reverse its own detention order."[30] Citing "'more than clear and convincing evidence' that Mitsunaga willfully violated the Court's no-contact order with respect to [a witness]" in this case, it argues that "the danger of releasing [Mitsunaga] is too great."[31] Referring to Judge Cousins' ruling, it maintains that "nothing short of detention would 'reasonably mitigate the risk that Mitsunaga or those acting at his direction would further corrupt the truth-seeking of trial,'" and that "there continues to be probable cause that Mitsunaga committed federal crimes while on [pretrial] release."[32] Therefore, it argues, "detention is required" under 18 U.S.C. § 3148(b) because he "is unlikely to abide by any condition or combination of conditions of release" and "cannot rebut [this] presumption."[33]

Responding to Mitsunaga's allegations regarding his recent health concerns, the United States argues these claims are "unfounded" and that the evidence instead indicates BOP is providing him adequate care.[34] Disputing Mitsunaga's characterization of his health as "precarious," the United States suggests this is "not supported by the facts."[35] It further notes that, according to Mitsunaga's recent medical records, FDC Honolulu medical staff

---

[30] Dkt. 804 at 2.
[31] *Id.* (quoting Dkt. 726 at 2).
[32] *Id.* (quoting Dkt. 726 at 3).
[33] *Id.* (citing 18 U.S.C. § 3148(b)).
[34] *Id.* at 3.
[35] *Id.*

"have been, and continue to be, attentive to [his] medical needs" and "are appropriately managing his care."[36]

Moreover, the United States argues that Mitsunaga's health concerns have "little bearing on the Court's analysis under 18 U.S.C. § 3148."[37] It suggests that the time Mitsunaga has spent in custody "could not have materially altered this analysis, especially when the trial . . . is still ongoing," and observes that his arguments for release "have little to do with his 'cunning, audacity, planning and desperation.'"[38] Considering Mitsunaga's proposed release conditions "wholly inadequate," the United States notes that his proposed $383,000 property bond and $250,000 family sureties "pale[] in comparison with [his] family's net worth," and that house arrest will fail as an effective deterrent because in the precipitating incident, Mitsunaga used a "trusted intermediary" to tamper with witnesses "from the comfort of his own home."[39] Further, "any private security company cannot be trusted because it will be paid for by Mitsunaga himself."[40] Nor, it maintains, will an increased no-contact order deter him because he "flouted the previous no contact order without a second thought," and phone limitations "cannot fully control who [he] meets and communicates with."[41] Therefore, it submits, "nothing short of detention will reasonably mitigate the risk that Mitsunaga" poses to the integrity of the trial.[42]

---

[36] *Id.*
[37] *Id.* at 11.
[38] *Id.* at 12 (citing Dkt. 726 at 3).
[39] *Id.*
[40] *Id.*
[41] *Id.*
[42] *Id.* at 11–12.

*E. Bail Review Hearing*

On May 10, 2024, the Court held a bail review hearing in open court and heard oral argument and witness testimony regarding Mitsunaga's current health condition and his continued detention or release.[43] At the hearing, BOP medical providers at FDC Honolulu confirmed that Mitsunaga was being monitored for hyponatremia, a condition involving sodium deficiency in the bloodstream, and hypertension (high blood pressure). Given testimony regarding potential interactions between a blood pressure medication and hyponatremia, BOP confirmed that one of Mitsunaga's blood pressure medications had been discontinued following his hyponatremia diagnosis on May 6, 2024, and that he was scheduled for additional sodium testing on May 15, 2024, to see whether his blood pressure would attain a "steady state" in response to this discontinuation. Further, the evidence suggested at trial that Mitsunaga has not been taking his medications as prescribed, including taking too much and too little of certain prescriptions, which BOP medical providers suggested may have been contributing factor to his fall on May 6, 2024. They committed to providing him counseling on compliance with taking his medications as prescribed, and confirmed that a sign had been placed in his cell reminding him to take his medication on time.

Moreover, BOP medical providers indicated that they could accommodate Mitsunaga's medical treatment around his trial schedule by providing him a "pill line" in the mornings at or before 6:00 AM, before he leaves for court; performing daily blood

---

[43] *See* Dkt. 819.

pressure tests; and coordinating with the U.S. Marshals Service to ensure accommodations around his treatment needs and trial schedule. They indicated these accommodations were feasible and that BOP was making similar accommodations for other inmates at FDC Honolulu.

The Court also heard witness testimony from BOP officers; Mitsunaga's primary care physician; and Mitsunaga's cellmate at FDC Honolulu, who witnessed his fall on May 6, 2024.

USPPS further confirmed that, after hearing the testimony at the hearing, it recommends that Mitsunaga continue to be detained as BOP appeared "willing to provide accommodations to meet [Defendant Mitsunaga's] medical needs."[44] Responsive to Mitsunaga's recent health concerns, the Court then issued a series of orders to BOP and the U.S. Marshals Service to ensure his continued care and transport needs for the pendency of trial.

At the hearing, the Court issued an oral ruling finding that, consistent with Magistrate Judge Cousins' findings, "there is clear and convincing evidence that Mitsunaga violated the pretrial release condition of no-contact, and there is probable cause Mitsunaga committed federal crimes while on release."[45] Considering the 18 U.S.C. § 3142(g) factors, the Court also affirmed Magistrate Judge Cousins' decision that "there are no conditions or combination of conditions that can mitigate the risk of danger Mitsunaga poses to the

---

[44] Dkt. 819.
[45] *Id.*

community."[46] Thus finding, the Court ordered Mitsunaga to continue his detention at FDC Honolulu.[47]

### III.    LEGAL STANDARD

*A. Order of Detention*

Under the Bail Reform Act, "[a] judicial officer authorized to order the arrest of a person . . . before whom an arrested person is brought shall order that such person be released or detained, pending judicial proceedings, under this chapter."[48] A defendant shall be detained pending trial where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."[49] Federal Rule of Criminal Procedure ("Rule") 32.1(a)(6) establishes that before a magistrate judge, the defendant has the burden of establishing by clear and convincing evidence that the defendant will not flee or pose a danger to any other person or to the community. But before this Court, "[o]n a motion for pretrial detention, the government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk"[50] "or by clear and convincing evidence[] that the defendant

---

[46] *Id.*
[47] *Id.*
[48] 18 U.S.C. § 3141(a).
[49] 18 U.S.C. § 3142(e)(1).
[50] *See United States v. Diaz-Hernandez*, 943 F.3d 1196, 1198 (9th Cir. 2019) (quoting *United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015)).

poses a danger to the community."[51] Doubts regarding the appropriateness of pretrial release must be "resolved in favor of the defendant."[52]

Further, under 18 U.S.C. § 3142(f), upon the Court's own motion in a case that involves "a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror," "[t]he judicial officer shall hold a hearing to determine whether any condition or combination of conditions . . . will reasonably assure the appearance of such person as required and the safety of any other person and the community."[53]

In determining whether there are conditions of release that will reasonably assure the appearance of the defendant and the safety of the community, the Court considers: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence and involves a minor victim; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics (including the defendant's character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, history relating to drug or alcohol abuse, and supervision status at the time of the current offense); and (4) the nature and seriousness of

---

[51] *United States v. Aitken*, 898 F.2d 104, 107 (9th Cir. 1990) (citing *United States v. Motamedi,* 767 F.2d 1403, 1406 (9th Cir. 1985)).
[52] *Diaz-Hernandez*, 943 F.3d at 1198 (citing *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990)).
[53] 18 U.S.C. § 3142(f)(2).

the danger to any person or the community that would be posed by the defendant's release.[54]

### B. Revocation of Release for Violation of a Release Condition

Under 18 U.S.C. § 3148, "[a] person who has been released . . . and who has violated a condition of his release, is subject to a revocation of release, an order of detention, and a prosecution for contempt of court."[55] "The judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer finds: that there is—(A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or (B) clear and convincing evidence that the person has violated any other condition of release" and that "there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or the person is unlikely to abide by any condition or combination of conditions of release."[56] "If there is probable cause to believe that, while on release, the person committed a Federal, State, or local felony, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community."[57] Probable cause means

---

[54] *See* 18 U.S.C. § 3142(g); *Diaz-Hernandez*, 943 F.3d at 1198; *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008); *United States v. Mendez*, No. 121CR00095ADABAM, 2023 WL 3931720, at *3 (E.D. Cal. June 9, 2023).
[55] 18 U.S.C. § 3148(a).
[56] 18 U.S.C. § 3148(b).
[57] 18 U.S.C. § 3148(b)(2); *see Mendez*, 2023 WL 3931720, at *3.

"a 'fair probability,' not certainty, and requires consideration of the totality of the circumstances."[58]

### C.  Review of Detention Order

Under District of Hawaii Local Rule ("Local Rule") 57.7, "a party challenging a detention or release order may file a motion for reconsideration before the magistrate judge or an appeal to the district judge."[59] The defendant "may appeal an order of a magistrate judge detaining or releasing [d]efendant, pursuant to the Bail Reform Act of 1984, 18 U.S.C. § 3141, et seq." and "may also appeal any of [d]efendant's conditions of release imposed by a magistrate judge."[60] "Where the challenge to the order is based on new information that was not available to the parties or the magistrate judge at the detention hearing, the challenge should be raised in a motion for reconsideration, except" for "appeal[s] of a detention or release order" or further motions requesting release or detention after "the district judge has addressed detention or release," which must be presented to the district judge.[61] Appeals of magistrate judge orders detaining or releasing a defendant "shall be heard expeditiously [by the district judge], typically within two business days of the notice of appeal of the order of a magistrate judge."[62]

Further, under 18 U.S.C. § 3145(b), "if a person is ordered detained by a magistrate judge . . . the person may file . . . a motion for revocation or amendment of the order"[63] or

---

[58] *United States v. Krupa*, 658 F.3d 1174, 1177 (9th Cir. 2011) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).
[59] Hawaii Local Rule 57.7.
[60] Hawaii Local Rule 57.7(b).
[61] Hawaii Local Rule 57.7(a), (f).
[62] Hawaii Local Rule 57.7(d).
[63] 18 U.S.C. § 3145(b).

"[a]n appeal from a release or detention order."[64] A motion or an appeal must "be determined promptly."[65] This Court reviews a magistrate judge's pretrial release order under 18 U.S.C. § 3145(b) and (c) *de novo*.[66]

## IV.   DISCUSSION

After a *de novo* review, consistent with its oral order, the Court concludes that the Magistrate Judge's Order of Detention was proper based on the information available at the time. Thus, the Court AFFIRMS the Magistrate Judge's Order of Detention and DENIES Mitsunaga's Appeal. The Court further *sua sponte* construes the Appeal as a new Motion for Bail Review based on new information regarding Mitsunaga's health conditions, and DENIES Mitsunaga's request for release with conditions.

*A. The Magistrate Judge properly ordered Mitsunaga's detention.*

The Court concludes that the Magistrate Judge properly ordered Mitsunaga detained under 18 U.S.C. § 3148 based on the information available at the time. Based on the evidence presented by the prosecution, the Magistrate Judge found "more than clear and convincing evidence" that Mitsunaga violated the no-contact pretrial release condition, as well as "probable cause to believe Mitsunaga committed" two federal crimes (obstruction of justice and witness tampering) while on release.[67] Moreover, after reviewing Mitsunaga's proposed "enhanced" release conditions and the factors under 18 U.S.C. § 3142(g), the Magistrate Judge concluded there was no condition or combination of

---

[64] 18 U.S.C. § 3145(c).
[65] 18 U.S.C. § 3145(b), (c).
[66] *United States v. Koenig*, 912 F. 2d 1190, 1191–93 (9th Cir. 1990).
[67] Dkt. 726 at 2.

conditions of release that would assure that Mitsunaga would not pose a danger to the safety of any other person or the community.[68]

The Court further notes that, although Mitsunaga's Appeal argues that recent health conditions "are sufficient to rebut the presumption of detention," the specific health events giving rise to the Appeal had not yet occurred and this information was not available to the Magistrate Judge at the time he issued the Order of Detention.[69] Accordingly, the Court AFFIRMS the Magistrate Judge's Order of Detention based on the information available at the time, and DENIES the Appeal.

> B. *Mitsunaga's detention is proper because he has not rebutted the presumption that there are no conditions or combination of conditions that can assure he will not pose a danger to the safety of any other person or the community.*

Second, *sua sponte* construing Mitsunaga's Appeal as a new Motion for Bail Review based on recent health information, the Court concludes that Mitsunaga has not rebutted the presumption that there are no conditions or combination of conditions that can assure he will not pose a danger to the safety of any other person or the community. Therefore, the Court DENIES Mitsunaga's Motion for Bail Review.

1. The Court *sua sponte* construes Mitsunaga's Appeal as a new Motion for Bail Review.

First, noting Mitsunaga's Appeal responds to recent health events and new information that has arisen since the Magistrate Judge issued the Order of Detention, the Court *sua sponte* construes the Appeal as a new Motion for Bail Review under Hawaii

---

[68] *Id.* at 2–3.
[69] *Id.* at 1–2.

Local Rule 57.7 and 18 U.S.C. § 3145(b) and (c). Accordingly, the Court set expedited briefing and a bail review hearing on this matter, and determined the matter "promptly," consistent with the timing requirements of Local Rule 57.7(d) and 18 U.S.C. § 3145.[70]

2. <u>There is a rebuttable presumption that no condition or combination of conditions will assure that Mitsunaga will not pose a danger to the safety of any other person or the community.</u>

Consistent with the Magistrate Judge's findings and based on the evidence proffered by the prosecution in this case, the Court finds there is more than clear and convincing evidence that Mitsunaga violated the no-contact condition of release by arranging for an intermediary, Joann Kameoka ("Kameoka"), to influence the testimony of Rudy Alivado ("Alivado"), a critical witness in this case. Further, the Court finds there is probable cause that Mitsunaga committed new federal crimes while on release, including obstruction of justice, in violation of 18 U.S.C. § 1503, and witness tampering, in violation of 18 U.S.C. § 1512(b). Therefore, there is a rebuttable presumption of detention in this case, and Mitsunaga must be detained under 18 U.S.C. § 3148(b) unless he can rebut this presumption.[71]

---

[70] Hawaii Local Rule 57.7(d); 18 U.S.C. § 3145(b), (c).
[71] *See* 18 U.S.C. § 3148(b); *United States v. Mendez*, No. 121CR00095ADABAM, 2023 WL 3931720, at *3 (E.D. Cal. June 9, 2023).

3. <u>No condition or combination of conditions of release will assure that Mitsunaga will not pose a danger to the safety of any other person or the community.</u>

Considering the following factors under 18 U.S.C. § 3142(g), the Court determines that Mitsunaga remains a danger to the community, and that this risk may not be fully mitigated by any proposed conditions of release.

a. *Nature and circumstances of the offense charged.*

Considering the underlying charges, Mitsunaga is accused of serious crimes in this case, including conspiracy to commit honest services wire fraud and federal program bribery, and conspiracy against rights.[72] These charges allege Mitsunaga conspired to defraud the City and County of Honolulu and its citizens of their right to the honest services of Prosecuting Attorney Kaneshiro through a *quid pro quo* bribery; conspired to corruptly give, offer, or agree to give things of value to Kaneshiro with the intent to influence and reward him for services performed; and conspired to injure, oppress, threaten, and intimidate Laurel J. Mau in the free exercise and enjoyment of her constitutional rights.[73] This factor favors detention.

b. *The weight of evidence against the defendant.*

The weight of the evidence against Mitsunaga is strong.[74] The evidence at trial has demonstrated that Mitsunaga sent an email to Laurel Mau critiquing her and comparing her

---

[72] *See* Dkt. 70 (Superseding Indictment); *see also United States v. Hir*, 517 F.3d 1081, 1090 (9th Cir. 2008) (considering "nature and circumstances" of underlying offense charged in indictment to assess lower court's pretrial detention order); *Mendez*, 2023 WL 3931720, at *7 (considering "nature and circumstances of the underlying charges" upon defendant's violation of release conditions).

[73] *Id.* at 7–8, 20–21.

[74] The weight of the evidence against a defendant is the "least important of the various factors." *United States v. Hir*, 517 F.3d 1081, 1090 (9th Cir. 2008). Nonetheless, the evidence here still

to others he favored at Mitsunaga and Associates, Inc., including many of his codefendants in this case. Within hours of Mau's reply to Mitsunaga, she was fired by the company. A police report filed against Mau alleging theft of company time and resources, and supported by affidavits signed by Fujii and McDonald, was provided to the Honolulu Police Department at a warehouse owned by Mitsunaga. Mitsunaga and Tanaka, through Otani, subsequently arranged and held several meetings with Kaneshiro to discuss Mau's criminal prosecution over several years. During this time, Mitsunaga, his wife, and his associates donated several thousands of dollars to Kaneshiro's reelection campaign. And Mitsunaga engaged in mid-trial witness tampering of Rudy Alivado. This factor favors detention.

    *c.  The defendant's history and characteristics.*

Mitsunaga's recent attempts to influence trial testimony and his violations of the conditions of his release favor his detention. Based on these attempts, the Court is not persuaded that any conditions of release may reasonably mitigate the risk of danger he poses to any other person or the community in this case.

At the same time, the Court is cognizant that Mitsunaga is 82 years old; that he suffers from several health conditions, including hypertension, hyponatremia, a history of respiratory illness, and injuries from a recent fall at FDC Honolulu; and that he has, until recently and to the Court's knowledge, abided by the terms of his release conditions. However, in reviewing the evidence presented at the bail review hearing, the Court finds

---

contributes to the Court's conclusion, particularly given that the relevant testimony was corroborated and verified during the investigation.

Mitsunaga's recent health conditions are insufficient reasons to rebut the presumption of detention in this case.

In his Motion and at the hearing, Mitsunaga presented new evidence that he recently sustained a fall at FDC Honolulu, suffering a superficial head laceration; was diagnosed with hyponatremia while receiving treatment from the fall; and has hypertension, alleging he has had increasingly high blood pressure results over the past week.[75] Mitsunaga also maintained that BOP is not providing him with certain medications and is failing to ensure he is taking his medications properly. He also raised concerns that BOP did not have medical staff on-site at the FDC Honolulu facility between 10:00 PM and 6:00 AM, and argued that his early trial departure was interfering with his ability to take his medications as clinically indicated.

BOP presented evidence and documentation that it responded to Mitsunaga's fall by treating him at FDC Honolulu and promptly sending him to the Pali Momi Medical Center Emergency Department for evaluation. It also reported that it had performed follow-up assessments of Mitsunaga after the fall; had discontinued one hypertension medication in response to his hyponatremia diagnosis due to potential negative interactions; had scheduled another follow-up appointment to assess his sodium levels in response to this

---

[75] The evidence at trial further established that some of these high blood pressure results were from tests allegedly performed by the U.S. Marshals Service immediately upon Mitsunaga's arrival at the courthouse each morning. BOP medical witnesses indicated some of these results may be inaccurate given they were taken after physical activity and upon entering a higher stress environment. Moreover, these results do not appear to be documented and were self-reported by Mitsunaga, and therefore were not available to BOP or the Court.

change in medication; had ordered daily blood pressure tests; and had put a sign in his cell reminding him to take his medication. Moreover, BOP's pharmacist reported that counts of Mitsunaga's medications indicated he was not taking the proper dosages, and suggested this could have contributed to his fall, hyponatremia diagnosis, and elevated blood pressure.

When asked by the Court whether BOP could ensure Mitsunaga is taking his medication around his trial schedule via a "pill line"—the "gold standard" for medication compliance—BOP affirmed it could make such accommodations, including changes to staff schedule, and would coordinate with the U.S. Marshals Service to ensure his care and transport, indicating it has made similar accommodations for other inmates with early trial schedules. BOP also affirmed to the Court that it had licensed and available staff to perform daily blood pressure tests, with a follow-up test 15–30 minutes after a high result, as recommended by Mitsunaga's primary care physician. Further, BOP clarified that a direction issued by the staff at Pali Momi Medical Center to limit Mitsunaga's liquid intake in response to his hyponatremia diagnosis was for water specifically, not all liquids, and that this specification had been given to Mitsunaga orally at his emergency visit and is consistent with the written discharge instructions in his medical records.

For these reasons, consistent with its oral order, and contingent upon the directions to BOP issued at the hearing and again below, the Court finds that BOP is reasonably managing Mitsunaga's health issues. Consistent with BOP security protocols, the Court

hereby ORDERS BOP at FDC Honolulu to comply with the following directions as necessary to ensure Mitsunaga's ongoing care:

1. Perform daily blood pressure tests in the morning and evening, with a follow-up test 15–30 minutes after a high result, as recommended by Mitsunaga's primary care physician;

2. Dispense Mitsunaga's medication at a pill line at or before 6:00 AM and to collaborate with the U.S. Marshals Service to adjust his departure time for court accordingly;

3. Submit daily status reports to the United States or USPPS to convey to the Court regarding Mitsunaga's health status, conditions, and treatment, including daily blood pressure reports;

4. Perform a follow-up sodium level assessment for May 15, 2024, or as clinically indicated, and continue to monitor Mitsunaga's sodium levels as medically necessary;

5. Provide Mitsunaga warmer clothing and/or a blanket at FDC Honolulu to reduce risk of illness, subject to the BOP's security protocols;

6. Coordinate Mitsunaga's care, treatment, and transportation with the U.S. Marshals Service, including the sharing of blood pressure test results;

7. Consult with Mitsunaga's primary care physician regarding Mitsunaga's care and treatment; and

8. Counsel Mitsunaga on compliance with taking his medications as prescribed.

Further, the Court hereby ORDERS that the U.S. Marshals Service permit Mitsunaga to have a down coat and/or blanket in the detention cell in the federal courthouse if his family provides them, subject to U.S. Marshals Service security protocols.

Given these assurances at the hearing, the Court concludes that Mitsunaga's recent health issues do not rebut the presumption of detention and that he remains a danger to any person or the community during the pendency of this trial. This factor favors detention.

> ### d. The nature and seriousness of the danger to any person or the community that would be posed by his release.

Based on Mitsunaga's recent attempts to influence trial testimony in this case, the Court concludes Mitsunaga poses a danger to the community if released. These attempts included directing Kameoka to meet with Alivado to convince him to change testimony he gave before the grand jury in this case, in direct violation of the no-contact provision of Mitsunaga's release conditions and constituting probable cause he committed federal crimes of witness tampering and obstruction of justice, after earlier giving Kameoka an envelope filled with $10,000 in cash for unspecified reasons. Given Mitsunaga's attempt to influence this trial through intermediaries, including persuading others to act at his direction, the Court is concerned about the danger his release would pose to the community. As the Court observed at the hearing, even if an isolated instance, "that is one isolated incident in which Mr. Mitsunaga tried to put his thumb on the scale of justice during the course of a trial in which he was charged with serious offenses" and constitutes a "serious challenge to the integrity of this trial and our system of justice."[76] This factor strongly favors detention.[77]

---

[76] Dkt. 819.

[77] *See United States v. Manafort*, 897 F.3d 340, 345 (D.C. Cir. 2018) (affirming lower court decision revoking release where defendant engaged in witness tampering, and observing defendant "poses a danger to the safety of the community through harm to the administration of justice[] [and] harm to the integrity of the courts. While these risks are abstract, . . . the charges represent a

Further, the Court is not convinced that any condition or combination of release conditions will effectively deter him from such conduct.[78] Given Mitsunaga's past violations of his pretrial release conditions, the Court observes home confinement would not sufficiently deter attempts to communicate with prohibited persons through individuals with whom he is permitted to communicate and with whom he would be residing. Although GPS monitoring, private security, and enhanced no-contact and phone restrictions may limit and document Mitsunaga's movement and contacts, the Court finds they are insufficient methods of addressing violations that may and have occurred via indirect communications.[79] The Court is also not convinced that an increased bond security or unsecured sureties will sufficiently mitigate the risk that Mitsunaga poses to others or the community. These circumstances indicate that a release plan including these conditions would not offer reasonable assurance that Mitsunaga will not continue to engage in this type of dangerous conduct where he resides upon release.[80] This factor strongly favors detention.

---

corrupt attempt to undermine the integrity and truth of the fact-finding process upon which our system of justice depends. Moreover, the potential harm relates to the danger that the defendant will commit another crime of any nature while he is on release." (internal quotations omitted)).

[78] *See id.* at 345 (noting that, given defendant's "attempt to suborn perjury, with the presumption arising from the Grand Jury's finding of probable cause for the witness-tampering charges, . . . there are no conditions that would assure that the defendant will comply with the most fundamental condition of release under the Bail Reform Act: that he not commit a Federal, State, or Local crime during the period of release").

[79] *See id.* (observing that "[i]t would be entirely impractical and ineffective to demand the surrender of [defendant's] cell phone or to disconnect his internet service at home, due to the difficulty of monitoring to ensure compliance").

[80] *See id.* (affirming lower court decision revoking release for defendant who engaged in witness tampering); *cf. United States v. Howard*, 793 F.3d 1113, 1115 (9th Cir. 2015) ("I would therefore disapprove—and disregard—any condition on [defendant's] liberty that is not tied closely to the two statutory requirements for the granting of pretrial release, and any condition involving access

-24-

Having considered the factors under 18 U.S.C. § 3142(g), the Court determines that Mitsunaga remains a danger to the community, and that this risk may not be effectively mitigated by any proposed conditions of release.

4.  <u>Mitsunaga is unlikely to abide by any condition or combination of conditions of release.</u>

The Court additionally finds that, based on prior findings regarding Mitsunaga's violations of the release conditions imposed the Court—and of the law—it is unlikely that he will abide by any condition or combination of conditions of release.[81] The Court observes this finding provides a separate basis for his detention under 18 U.S.C. § 3148(b)(2)(B).[82]

Thus concluding Mitsunaga has not rebutted the presumption of detention under 18 U.S.C. § 3148, the Court accordingly DENIES the Motion. The defendant Dennis Mitsunaga is therefore committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant must be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on the request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to

_____

to evidence of witnesses that is not enforced with equal vigor against the government—*unless there is a specific showing that the defendant has engaged in witness intimidation or tampering, as those terms are strictly defined by the criminal laws prohibiting such conduct.* The government here has shown nothing close, so I would order [defendant] released at once pending further fact-finding by the district court." (J. Kozinski, concurring) (emphasis added)).

[81] *See United States v. Mendez*, No. 121CR00095ADABAM, 2023 WL 3931720, at *5 (E.D. Cal. June 9, 2023); *Manafort*, 897 F.3d at 345.

[82] *See* 18 U.S.C. § 3148(b)(2)(B).

a United States Marshal for the purpose of an appearance in connection with a court proceeding.

## V.     CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the Magistrate Judge's Order of Detention at Docket 726 and **DENIES** the Appeal at Dockets 782 and 786. Further, construing the Appeal at Dockets 782 and 786 *sua sponte* as a new Motion, the Court **DENIES** Mitsunaga's request for pretrial release from custody.

IT IS SO ORDERED.

Dated this 13th day of May, 2024.

/s/  *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE